**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SERPIL CAN, individually and as administrator and personal representative of the estate of RAMAZAN CAN, deceased, and ESRA CAN, a minor, by her mother and guardian, SERPIL CAN; <br><br> AYŞEGÜL KARADAĞ, individually and as administrator and personal representative of the estate of OSMAN KARADAĞ, deceased, DUYGU NUR KARADAĞ, a minor, by her mother and guardian, AYŞEGÜL KARADAĞ, and HATICE AFRA KARADAĞ, a minor by her mother and guardian, AYŞEGÜL KARADAĞ; and <br><br> FATMA VURUCU, individually and as administrator and personal representative of the estate of ADEM VURUCU, deceased, ALI CIHAN VURUCU, a minor, by his mother and guardian, FATMA VURUCU, and AHMET YASIN VURUCU, a minor, by his mother and guardian, FATMA VURUCU; <br><br>        Plaintiffs, <br><br> v. <br><br> GOODRICH PUMP & ENGINE CONTROL SYSTEMS, INC.; ROLLS-ROYCE CORPORATION; WAYNE WATTLEY; DEAN ANDERSON; AND JIM DANA; <br><br>        Defendants. | 3:08-cv-01087 (CSH) <br><br><br> **OPINION AND ORDER** <br><br> **On Defendants' Motions To Dismiss** **[docs. ##13, 17]** |

HAIGHT, Senior District Judge:

**I.     Introduction**

     This action concerns a helicopter crash that occurred on July 19, 2006, in Antalya, Turkey.  The helicopter was manufactured by MD Helicopters, Inc., an Arizona corporation not a

defendant, with component parts that were manufactured by the two principal defendants in the action, Rolls-Royce Corporation ("RRC") and Goodrich Pump & Engine Control Systems, Inc. ("GPECS").[1]  Plaintiffs, who appear both in their individual capacities and as representatives of relatives who died in the crash, are all citizens of Turkey.  This Court's subject matter jurisdiction arises under 28 U.S.C. § 1332(a)(2), because plaintiffs are citizens or subjects of a foreign state, defendants are citizens of several states, and the matter in controversy exceeds $75,000. Plaintiffs have alleged state law claims for product liability against RRC (Count I), negligence against RRC (Count II), product liability against GPECS (Count III), negligence against GPECS (Count IV), and destruction or spoliation of evidence against all defendants (Count V).

All defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim.  GPECS limits its motion to one argument: the issue-preclusive effect of a state-court judgment in Indiana, where the Superior Court of Marion County (the "Indiana Court") dismissed an almost identical suit[2] (the "Indiana Action") on the grounds of *forum non conveniens*.[3]  *See* GPECS Mot. [doc. #13]; Order of Dismissal, *Can v. Rolls-Royce Corp.*, Cause No. 49D03-0707-PL-029590 (Ind. Super. Ct. June 24, 2008), *reproduced as* GPECS Br. ex. B [doc. #15-3 at 15-17] [hereinafter "Indiana Decision"].  RRC joins in GPECS's issue-preclusion argument; also, in the alternative, RRC moves to dismiss for lack of personal jurisdiction, and it

---

1.     Defendants Wayne Wattley, Dean Anderson, and Jim Dana are all employees of Goodrich Pump & Engine Control Systems, Inc., who reside in Connecticut.  They are represented by the company's counsel and join in its motion, hence they are all collectively referred to as "GPECS." *See* GPECS Mem. [doc. #15] at 2 n.1.

2.     The degree of overlap between the two lawsuits is discussed *infra* in Part III.B.1.

3.     "[D]efendants GPECS . . . have filed this motion solely on the grounds of the order of the Indiana state court in an effort to preserve judicial time and resources.  However, GPECS reserves the right to contest the convenience of Connecticut as a forum if this Court determines not to enforce the judgment of the Indiana state court."  Defs.' Mem. [doc. #15] at 2 n.1.

makes a separate, substantive *forum non conveniens* argument in addition to any preclusion-based reliance it places on the Indiana Decision.   *See* RRC Mot. [doc. #17].   Plaintiffs and GPECS have requested oral argument, but after review of the papers, the Court finds that it would serve no judicial interest.

## II.      Standard of Review on Motion To Dismiss

A motion to dismiss under Rule 12(b)(6) must be decided on "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [] matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation omitted).  On a 12(b)(6) motion, all complaints must be construed liberally.  *See Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

## III.     Issue Preclusion (Collateral Estoppel) and the Effect of the Indiana Decision

### A.      Applicable Law

On a motion to dismiss under Rule 12(b)(6), judicial notice may be taken of other judicial documents that might provide the basis for issue preclusion.  *Cf. Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (for the related doctrine of claim preclusion or *res judicata*, "when all relevant facts" are amenable to being judicially noticed, "the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer").  Although commentators disagree about the propriety of raising issue preclusion on a motion to dismiss,[4] the rule in the Second Circuit is to allow such a

---

4.      *Compare* 18 Moore's Federal Practice § 132.05[6][a]-[b] (Supp. 2010) (stating that issue preclusion may be raised on a motion to dismiss but not under Rule 12(b)(6)) *with* 18 Alan Wright et al., Federal Practice & Procedure § 4405, at 103 & nn.32-33 (2d ed. & Supp. 2009) ("In various circumstances, preclusion defenses have been entertained on motions to dismiss. This procedure is most appropriate if the defense appears on the face of the complaint, but it has also been indulged when the parties have acquiesced and there is no apparent harm.  If matters outside the pleadings are considered, it is better to treat the motion as one for summary

motion.  *See Conopco, Inc. v. Roll Int'l.*, 231 F.3d 82, 86-87 (2d Cir. 2000) (when a defendant raises the affirmative defense of res judicata or collateral estoppel "and it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law," dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate); *Flaherty v. Lang*, 199 F.3d 607, 612, 614-15 (2d Cir. 1999); *Drance v. Citicorp*, 347 Fed. Appx. 608, 609 (2d Cir. Aug. 27, 2009) (unpublished decision) ("In its decision granting the Defendants' motion to dismiss, the district court discussed Drance's prior action, and properly found that it was precluded by the doctrine of collateral estoppel."). Furthermore, "the party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997) (internal quotation marks omitted).  On the other hand, "the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with [] the party opposing the application of issue preclusion."  *Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir. 1996).

The "fundamental notion" underlying issue preclusion, also known as collateral estoppel, "is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies."  *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008).  In order to find that subsequent litigation of a particular issue would be precluded under the doctrine of collateral estoppel, the Court must find four elements to be met:

> (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits.

judgment." (footnotes omitted)).

*Id.* (internal quotation marks and citations omitted); *see also Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995).

The Second Circuit has also stated that "[t]o determine the [preclusive] effect of a state court judgment," in order to satisfy the Full Faith and Credit Act, 28 U.S.C. § 1738, "federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state." *Conopco*, 231 F.3d at 87; *see also Kremer v. Chem. Constr. Corp.*, 456 U.S. 461 (1982). The current requirements of issue preclusion in Indiana are uncertain,[5] but in any event, the federal law of issue preclusion requires all the same elements and possibly more.[6] Because the parties have argued federal law, I deal primarily with those arguments, pausing to note that a finding of preclusion under federal law necessarily implies a finding of preclusion under Indiana law.

---

5. In 1992, the Indiana Supreme Court updated the state's law of collateral estoppel to ask only "[(a)] whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue and [(b)] whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Sullivan v. Am. Cas. Co. of Reading, Pa.*, 605 N.E.2d 134, 138 (Ind. 1992); *see also id.* at 139 ("We are persuaded that mutuality of estoppel and identity of parties should no longer be required for the defensive use of collateral estoppel, and we adopt the modern rule"). But subsequent decisions of Indiana's intermediate appellate court suggest that an older standard may still be in effect. *See Reising v. Guardianship of Reising*, 852 N.E.2d 644, 649 (Ind. Ct. App. 2006) ("Collateral estoppel requires the following: 1) a final judgment on the merits in a court of competent jurisdiction; 2) identity of issues; and 3) the party to be estopped was a party or the privy of a party in the prior action. The court must then consider whether the use of collateral estoppel is appropriate: [(a)] whether the party against whom the judgment is pled has had a full and fair opportunity to litigate the issue and [(b)] whether, under the circumstances, it would be otherwise unfair to permit the use of collateral estoppel." (citation omitted)); *see also* Stephen E. Arthur & Jerome L. Withered, 22A Indiana Practice: Civil Trial Practice § 36.6 (Supp. 2009). Regardless, even if the party-or-privy element was still required under Indiana law, it is met in the case at bar because issue preclusion is asserted against plaintiffs, who are the exact same plaintiffs as those in the Indiana Action.

6. For example, using the numbering in note 5, Indiana element (1) requires only a final judgment on the merits in a court of competent jurisdiction, while federal element (4) requires that the issue being precluded was necessary to support that judgment. It is possible, however, that federal element (4) would be subsumed under Indiana's catch-all fairness prong, element (b).

**B.     Discussion**

It is evident that defendants have established elements (2) through (4) of the federal collateral estoppel analysis.  With respect to elements (2) and (3), the parties here agree that the issue of *forum non conveniens* was actually litigated and actually decided by the state court in Indiana,[7] and plaintiffs have not asserted that their opportunity to do so was incomplete or somehow unfair.[8]

Furthermore, as to element (4), it is beyond question that the issue of *forum non conveniens* was "necessary to support" the Indiana Court's "valid and final judgment on the merits."  In its entirety, the Indiana Decision stated the following:

> Defendants have moved for dismissal of this cause of action based upon Indiana Rule of Trial Procedure 4.4(C) and the doctrine of *Forum Non Conveniens*.  This matter has been fully briefed and the Court has considered the evidence presented and the arguments of counsel, both written and oral.
>
> The Court finds that this Court is not a convenient forum for resolution of Plaintiffs' claims and that the courts of the country of Turkey would be a convenient and appropriate forum.
>
> IT IS THEREFORE ORDERED, ADJUDGED and DECREED that this matter be dismissed.  Plaintiffs are ordered to file their claims in Turkey within 120 days of this date.  Plaintiffs will be given leave to re-file should defendants not submit to the jurisdiction of the Turkish courts.

Indiana Decision at 1-2.

---

7.      The only exception to this general consensus is plaintiffs' argument that their claims for spoliation, even though asserted in their Indiana complaint, were not recognized by Indiana law. *See* Part III.B.1.i., *infra*.

8.      I have examined the transcript of the oral argument that preceded the court's ruling, as well as counsel's description of the attendant briefing.  *See* Pls.' Opp'n to GPECS Mot. ex. 3 [doc. #33-4]; Aff. of Arnold Taylor [doc. #15-2] at 2-3 (Oct. 1, 2008).  I am convinced that the opportunity to present the issue in Indiana was full and fair.

It is understandable, therefore, that plaintiffs argue that defendants have not met their burden as to the only remaining element of the issue preclusion test, namely, element (1): whether the issues in both proceedings are identical.  Plaintiffs argue that "the *forum non conveniens* law applied, the issues litigated and the objective factors considered by the Indiana state court differ from the *forum non conveniens* analysis which must be applied to the present case."  Pls.' Opp'n to GPECS Mot. [doc. #33] at 11; *see also id.* at 11-22.

More fundamentally, plaintiffs argue that as a matter of law, a federal district court sitting in diversity may *never* apply issue preclusion on the particular issue of *forum non conveniens* if the issue was previously decided by a judgment entered in a state court.  *Id.* at 4-11.  I address each of these arguments in turn.

### 1.      Identity of Issues in the Indiana Decision

A side-by-side comparison of the complaints in the Indiana Action and the case at bar reveals that, on the face of the pleadings, these actions are virtually identical.[9]  *Compare* Compl., *Can v. Rolls-Royce Corp.*, Cause No. 49D03-0707-PL-029590 (Ind. Super. Ct. July 18, 2007), *reproduced in* Aff. of Arnold Taylor ex. A [doc. #15-2 at 6 to #15-3 at 14] [hereinafter "Indiana Compl."], *with* Compl. [doc. #1].   But plaintiffs say the facial similarity between these complaints is misleading, because the Indiana Court and this Court would apply different state laws on the count for spoliation (Count V), and because the Indiana Court applied a different balancing of factors when it adjudicated the *forum non conveniens* motion.

---

9.      The only significant contrast with the Indiana Action is that the case at bar omits the defendant MD Helicopters, Inc., along with relevant allegations and counts.  Beyond that change, GPECS argues that the complaints are "identical."   *See* GPECS Mem. [doc. #15] at 9.  That is not entirely accurate; small differences between the complaints have been noted by the Court. (For instance, a serial number in current ¶ 4 (previous ¶ 1) has been changed from JGAMU001 to JGAMU0011.)  Nevertheless, aside from the legal distinctions discussed *infra*, plaintiffs have not argued that these minor textual differences are meaningful.

### i.       Plaintiffs' Claim for Spoliation

Plaintiffs argue that differences in the substantive Indiana and Connecticut laws governing spoliation should prevent this Court from applying collateral estoppel to bar their claims.  This difference between Indiana law and Connecticut law is not visible on the face of the complaints, which are virtually identical as to this count.[10]  Rather, plaintiff argues that claims for spoliation have been "recognized by the Connecticut Supreme Court," but "Indiana ha[s] refused to recognize intentional spoliation of evidence as an independent tort and ha[s] disallowed any recovery of compensatory damages under such a theory of liability."  Pls.' Opp'n to GPECS [doc. #33] at 21.

Because of this alleged substantive difference in law, plaintiffs further argue that courts in Connecticut have a public policy interest in retaining claims for the intentional tort of spoliation, while the Indiana Court was not concerned with that public policy interest.  To support this argument, plaintiffs cite several cases where courts have described a public policy rationale when retaining jurisdiction over product-liability claims.  *See id.* at 20.  But those cases all undertake a *forum non conveniens* analysis to determine whether an overseas forum is more convenient for

---

10.       There have been minor changes made to Count V, including the addition of the individual defendants, who were not parties to the Indiana Action.

There are also two textual changes. First, Paragraph 13 of Count V now includes the words "intentionally, purposefully, knowingly and/or negligently" in describing the activities that resulted in the destruction or spoliation of evidence, where those words were not included in paragraph 19 of the Indiana Complaint.  Second, Count V now includes the following new allegation:

> 12.       The examinations of the subject HMU and the subject ECU were completed on September 15, 2006 in West Hartford, Connecticut, and at that time were left in the possession of the defendant, Goodrich Pump & Engine Control Systems, Inc., and its employees, the defendants, Wayne Wattley, Dean Anderson and Jim Dana.

Compl. Count V ¶ 12, at 17.  Neither change is argued to affect the identity-of-claims analysis.

the plaintiff's substantive claims for defective-product tort liability.   None of plaintiff's cases suggests that a claim for spoliation of evidence — a derivative claim that entirely depends on other claims for its existence — would be sufficient to tip an a *forum non conveniens* analysis in favor of the local forum where other factors support dismissal in favor of a foreign forum.[11]

Pointing to the transcript of the oral argument in Indiana, plaintiff further argues that the Indiana court took into account the substantive difference in the state laws of Indiana and Connecticut when it decided to dismiss its case under the doctrine of *forum non conveniens*.  *See id.* at 21.

Plaintiffs are correct that during the oral argument on the defendants' *forum non conveniens* motion in the Indiana Action, the judge made an offhand remark about plaintiffs' spoliation claim.   But that remark must be taken in context.   From the transcript of the

---

11.      The only case within the Second Circuit that plaintiffs cite is *Carlenstolpe v. Merck & Co., Inc.*, 819 F.2d 33 (2d Cir. 1987), for the proposition that  "there is a public interest in having a U.S. court decide issues concerning tortious conduct in this country."  Pls.' Opp'n to GPECS [doc. #33] at 20.  But *Carlenstolpe* is inapposite.  In that case, the Second Circuit held that a denial of a motion to dismiss for *forum non conveniens* is a collateral order and is not subject to interlocutory appeal.  In so holding, the Court observed that "although the court could reasonably have found Sweden to be an appropriate forum for this action, it surely was not an abuse of discretion for the court to conclude that New York was in fact a more convenient forum."  819 F.2d at 35.

argument,[12] it is apparent that the subject of spoliation came up because of an argument made by

one of the plaintiff's counsel:

> [D]uring that investigation and inspection [of the cause of the crash], at some point in time, a small white piece of plastic was identified in the hydro-mechanical unit. . . . [O]ur experts . . . have developed their own theory as to how this piece of plastic caused, or contributed to, the crash of the helicopter.  . . . [A]pparently now, Your Honor, that piece of white plastic is missing.  So part of the Plaintiffs' claim in this case is that there likely will be, or must be, a[] spoliation of evidence claim, and it has been plead.  Under those circumstances, depending on where that happened — we believe that more likely than not it happened in Connecticut while in possession of Goodrich — then Connecticut law would have to apply to that particular portion of the tort, and under a 2006 Connecticut Supreme Court ruling, spoliation of evidence has been recognized as a separate and distinct tort that is independent of the underlying negligence action.  So in addition to the products liability counts that have been plead, there also is this issue of spoliation of evidence that is somewhat unique to the *United States'* system of justice.

Hearing Tr. at 19-20, Indiana Action, June 23, 2008, *reproduced as* Pls.' Opp'n ex. 3 [doc. #33-4]

(emphasis added).  Minutes later, the same attorney stated that the Indiana Court might need to

apply "some components of Turkish law, but I believe there would also be components of

possibly Connecticut law or possibly Indiana law."   *Id.* at 21-22.   The attorney for M.D.

Helicopters, Inc. disagreed: "If we did not brief it, I would ask the Court to indulge us to provide

---

12.      In the context of defendants' motions to dismiss under Rule 12(b)(6), the Court may judicially notice the transcript of the hearing in Indiana, not for the truth of any matters asserted therein, but rather for the fact that certain things were said, argued, and decided in that court. *See Global Network Communications, Inc. v. City of New York* , 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("Also, courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

it with authority that Indiana's choice of law analysis does also not include the concept of . . . *dépeçage* . . . where you will mix and match the laws from various states." *Id.* at 27.

The Court then responded:

> Well, if I understood [plaintiffs'] counsel's argument, it's a free-standing cause of action in Connecticut — whether this goes to Turkey or — at least that's what I think his argument was. I mean, I'm not trying to put words in your mouth or his mouth. So I don't know how I fix this. *If it's a cause of action in and of itself, then it can be tried in Connecticut.* I'm not saying it has to be or anything, but I don't ...

*Id.* (emphasis added; ellipsis in original).[13]

Plaintiffs argue that the remark made by the judge in the Indiana Action works to cabin that court's decision on *forum non conveniens*, carving out their claim for spoliation from any issue-preclusive effect the judgment might have otherwise. But I draw the opposite conclusion from the transcript of that hearing. Even though the Indiana Court acknowledged that a "free-standing cause of action in Connecticut . . . can be tried in Connecticut," it does not necessarily follow that plaintiffs' claim for spoliation should be exempt from the issue-preclusive effect of the Indiana Court's *forum non conveniens* ruling. That is true for two reasons.

First and foremost, plaintiffs' claim for spoliation inherits the *forum non conveniens* determination of the related product-liability claims precisely because the former is derived from the latter. In *Rizzuto v. Davidson Ladders, Inc.*, 905 A.2d 1165 (Conn. 2006), the Connecticut Supreme Court created Connecticut's cause of action for spoliation from whole cloth.[14] It

---

13.     Later, the attorney for GPECS returned to the point: "I don't know whether there's an independent cause of action for spoliation or not, but . . . it doesn't make any difference . . . ; the question is, on balance, where is the best place to try the case. . . . [I]t should be tried in Turkey." *Id.* at 32.

14.     The opinion begins with the following two sentences:  "The dispositive issue in this appeal is whether this state should recognize intentional spoliation of evidence as a cognizable independent tort.  We conclude that, under the circumstances alleged in the present case, we

-11-

determined that among several elements, a plaintiff claiming intentional spoliation of evidence must prove at trial "that the defendants' intentional, bad faith destruction of evidence rendered the plaintiff unable to establish a prima facie case *in the underlying litigation*."  *Id.* at 1180 (emphasis added); *see also id.* at 1179 (listing all five elements).  Because an action in this Court could not reach the merits of a claim for Connecticut's independent tort of spoliation without simultaneously passing on the merits of "the underlying litigation" — plaintiffs' product liability action — the claim for spoliation must travel to the same forum as "the underlying litigation."[15]

Second, the transcript reveals that the operative distinction being argued in the Indiana Court was not whether the action should be tried in Indiana or Connecticut, under each state's unique set of legal entitlements, but rather whether the action should be tried in the *United States or Turkey.*  During the hearing, plaintiffs' counsel accurately argued that the defendants were "not seeking to move this case from Indiana to Connecticut or to Arizona; they're seeking to move it to Turkey."  Hearing Tr. at 24.  Plaintiffs' counsel then argued precisely why "the public factors and the private factors . . . strongly favor the case remaining *in the United States*."  *Id.* (emphasis added).  Listing a variety of factors, plaintiffs' counsel then emphasized that the case should remain "in the United States" by repeating the phrase no less than ten times, and drawing no distinction between factors that favored Indiana, Arizona, or Connecticut respectively.  Defense counsel, by the same token, emphasized all the factors that favored Turkey — not factors that favored other states in within the United States.

---

should do so."  905 A.2d at 1169 (footnote omitted).

15.     Indeed, minor differences between one forum and another, such as whether claims may stand as "independent" sources of damages or not, are precisely the kinds of ancillary considerations that the Supreme Court instructs us to avoid in the *forum non conveniens* analysis.  *See, e.g.*, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 263 (1981) ("The doctrine of *forum non conveniens* . . . is designed in part to help courts avoid conducting complex exercises in comparative law.").

It is clear from the transcript that everyone present at the *forum non conveniens* hearing clearly understood that they were litigating the issue of whether the entire action belonged in the United States of America, or whether it belonged in Turkey. That is precisely the same question that this Court, sitting in diversity, faces today.

### ii.    Plaintiffs' Argument that Indiana Law Affords Wider Discretion Allowing Judges To Choose Among Factors

Plaintiffs also argue that the *forum non conveniens* issue facing this court is not identical to the *forum non conveniens* analysis in the Indiana Action because Indiana law permits more flexibility when balancing several factors in the analysis. *See* Pls.' Opp'n to GPECS [doc. #33] at 12-17. More particularly, plaintiffs argue that under the applicable Indiana Rule of Trial Procedure 4.4(C),[16] a judge is "free[] to pick and choose which, if any of the factors" set forth in

---

16.    Indiana Rule of Trial Procedure 4.4 is captioned "Service upon persons in actions for acts done in this state or having an effect in this state," and it provides in relevant parts:

> **(C) More convenient forum.** Jurisdiction under this rule is subject to the power of the court to order the litigation to be held elsewhere under such reasonable conditions as the court in its discretion may determine to be just.
>
> In the exercise of that discretion the court may appropriately consider such factors as:
>
> > (1) Amenability to personal jurisdiction in this state and in any alternative forum of the parties to the action;
> >
> > (2) Convenience to the parties and witnesses of the trial in this state in any alternative forum;
> >
> > (3) Differences in conflict of law rules applicable in this state and in the alternative forum; or
> >
> > (4) Any other factors having substantial bearing upon the selection of a convenient, reasonable and fair place of trial.
>
> **(D) Forum Non Conveniens--Stay or Dismissal.** No stay or dismissal shall be granted due to a finding of *forum non*

-13-

that rule should be weighed, in contrast to what plaintiffs claim is the "mandatory analysis set forth by the Supreme Court" in *Gulf Oil Corp v. Gilbert*, 330 U.S. 501 (1947), and its progeny. Pls.' Opp'n to GPECS at 16.

I will put aside the question of whether this Court, when sitting in diversity, should apply federal or Connecticut caselaw to a motion for *forum non conveniens*.[17]   The Connecticut Supreme Court has pointed to federal decisions on *forum non conveniens* as the proper "frame of reference" for Connecticut law.[18]   *Durkin v. Intevac, Inc.*, 782 A.2d 103, 112-13 (Conn. 2001)

*conveniens* until all properly joined defendants file with the clerk of the court a written stipulation that each defendant will:

> (1) submit to the personal jurisdiction of the courts of the other forum; and

> (2) waive any defense based on the statute of limitations applicable in the other forum with respect to all causes of action brought by a party to which this subsection applies.

**(E) Order on Forum Non Conveniens--Modification.** The court may, on motion and notice to the parties, modify an order granting a stay or dismissal under this subsection and take any further action in the proceeding as the interests of justice may require. If the moving party violates a stipulation required by subsection (D), the court shall withdraw the order staying or dismissing the action and proceed as if the order had never been issued. Notwithstanding any other law, the court shall have continuing jurisdiction for the purposes of this subsection.

17.    In one of the leading cases on *forum non conveniens*, *Piper Aircraft Co. v. Reyno*, the Supreme Court declined to determine the *Erie* question of whether *forum non conveniens* is a procedural doctrine, which would require a district court sitting in diversity to apply the federal common law of *forum non conveniens*, or whether instead the doctrine is substantive in nature, therefore requiring district courts to apply the law of a particular state.   Given the degree of similarity between the state and federal doctrines, I reach the same conclusion that the Supreme Court reached in *Piper*: the distinction would not affect the outcome of this case.   454 U.S. at 249 n.13 (noting that in previous decisions, federal district courts had reached the conclusion that state and federal *forum non conveniens* analyses were "virtually identical," and declining to disturb that conclusion).

18.    For a discussion of the steps and factors involved, see Part IV.A., *infra*.

("With these principles in mind, we turn to the four step process for examining forum non conveniens claims outlined in *Gulf Oil Corp. v. Gilbert* and clearly set forth in *Pain v. United Technologies Corp.*, [D.C. Cir. 1980], which we have stated is a 'useful frame of reference for the law of Connecticut.'" (citations omitted)); *id.* at 110 nn.7-8 (pointing out that Connecticut cases on *forum non conveniens* merely elaborate upon the core principles in *Gulf Oil Corp. v. Gilbert*).

I turn now to the core of plaintiffs' argument, that the state-law *forum non conveniens* analysis facing the Indiana Court was not identical to the federal-law analysis facing this Court today. Plaintiffs concede that "there is a similarity in the spirit of Indiana and federal *forum non conveniens* rules," but they argue that the rules, "and more importantly their application, are not the same." Pls.' Opp'n to GPECS at 15. For this proposition, plaintiffs cite *McCracken v. Eli Lilly & Co.*, 494 N.E.2d 1289 (Ind. Ct. App. 1986), an appeal from an Indiana trial court's dismissal for *forum non conveniens* pursuant to T.R. 4.4(C), which the Indiana Court of Appeals reviewed for abuse of discretion.[19]

Plaintiffs are correct that the text of Trial Rule 4.4(C) seems to prescribe different steps or factors than those provided by the Supreme Court in *Gulf Oil Corp v. Gilbert*. But *McCracken*

_____

19.        During the *forum non conveniens* hearing in the Indiana Action, all counsel relied on federal cases on *forum non conveniens*, and at one point, counsel for GPECS drew the Court's attention to *McCracken* as having followed Supreme Court precedent on *forum non conveniens*. *See* Hearing Tr. at 32. Similarly, GPECS argues in its Reply here that "when before the Indiana Court, the plaintiffs urged application of federal case law as interpretative guidance concerning the various public and private factors to be considered under Indiana Rule of Practice 4.4.(c)." GPECS Reply [doc. #40] at 5-6. In a footnote, GPECS points out that in the Indiana Action, plaintiffs cited as authority approximately 30 federal cases. *Id.* at 6 n.3.

Although I might have judicially noticed the briefs before the Indiana Court if they had been provided, for the purposes of this motion to dismiss, I do not rely on GPECS's characterization of those briefs. Nevertheless, it appears from the transcript that the general trend in this litigation was to look to federal cases on *forum non conveniens*, and plaintiffs give me no reason to doubt that impression.

does not merely identify a 'similarity in spirit' and stop there.  Instead, *McCracken* explicitly and unmistakably relies upon and applies federal jurisprudence when reviewing the lower court's decision.  The decision begins:

> Initially we note that we *place reliance* upon the holdings in four federal cases which bear a factual similarity to the case on appeal. . . .  The language used in the federal cases displays a semantic difference in some degree from the language contained in T.R. 4.4.(C); however, there is a sufficient similarity in the spirit of the state and federal rules as they relate to the doctrine of *forum non conveniens* in the context of international litigation that *we deem them to be appropriate authority* in deciding this appeal.

494 N.E.2d at 1292 (citations omitted; emphases added)); *see also Hafner v. Lutheran Church-Missouri Synod*, 616 F. Supp. 735, 742 (N.D. Ind. 1985) (former Indiana Court of Appeals Judge Sharp, writing as chief judge of the federal Northern District of Indiana, describing an "overlay between the factors considered in Indiana Trial Rule 4.4(C) and those identified . . . in *Gulf Oil Corp. v. Gilbert*," and concluding that "under both Indiana and federal law the dismissal of this case could be based upon *forum non conveniens*"); 21 Stephen E. Arthur & Jerome L. Withered, Indiana Practice Series: Civil Trial Practice § 10.1 (citing federal precedent alongside state cases to describe the doctrine of *forum non conveniens* in Indiana) (Supp. 2009).

Moreover, after announcing that it intended to "place reliance" upon federal decisions, the appellate court in *McCracken* marched through the paces of the federal test for *forum non conveniens* — and not any other alternative state test — to determine whether the lower court had properly applied the doctrine.  Thus, *McCracken* contains a discussion of the balance of public and private interests in favor of the local and foreign forums, 494 N.E.2d at 1292-93, the deference owed to plaintiff's choice of forum, *id.* at 1293, and the adequacy and availability of the alternate forum, *id.*  The court did not suggest that any of these three key considerations —

availability and adequacy of an alternate forum, deference to the plaintiff's choice of forum, and the balance of private and public interests — could be omitted or ignored by Indiana courts.

Similarly, in this case, plaintiffs presented arguments to the Indiana Court on all of these factors. *See* Tr. at 15, 21, 23-24, 33-34 (availability and adequacy of Turkish courts); *id.* at 17-18, 36, 38 (deference due to plaintiff's choice of forum); *id.*, *passim* (balance of public and private factors). There is no suggestion in the record that the Indiana Court failed to consider any of the factors that were argued.

Plaintiffs are correct that the brevity of the Indiana Decision makes the Indiana Court's decision somewhat difficult to parse. Plaintiffs may also be right to complain that the Indiana Court failed to make "findings of fact relative to the motions" on the record. Pls.' Opp'n to GPECS at 16. But even if the Indiana Court had misapplied Indiana law and committed reversible error, the remedy for such error was to seek articulation or to appeal the decision.[20] The text of the order may be terse, but its determination of the *forum non conveniens* issue is clear. When applying issue preclusion, it is not this Court's place to review the merits of, or correct legal errors in, the previous decision. *See Grieve v. Tamerin*, 269 F.3d 149, 153-54 (2d Cir. 2001) (previous district court's dismissal in deference to pending state-court action, even though erroneous, precluded relitigation of that issue in separate action commenced in another district court).

Furthermore, I conclude that to the extent they exist, any minor differences between the federal and Indiana *forum non conveniens* doctrines are immaterial, because the underlying issue is fundamentally identical. *See Fulani v. Bentsen*, 862 F. Supp. 1140, 1151 (S.D.N.Y. 1994)

---

20.        In fact, plaintiffs did file such an appeal, before withdrawing it undecided. *See* Notice of Appeal, GPECS Mot. ex. C [doc. #15-3 at 18]; Motion for Voluntary Dismissal of Appeal, GPECS Mot. ex. D [doc. #15-3 at 22].

-17-

("[T]he fact that substantive law may be different in the two jurisdictions does not affect the application of issue preclusion."(quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 258 (D.C. Cir. 1992))); *cf. Montana v. United States*, 440 U.S. 147, 158, 161-62 (1979) (rejecting the contention that collateral estoppel "extends only to contexts in which the controlling facts and applicable legal rules remain unchanged," and holding that collateral estoppel operates "unless there have been major changes in the law governing" the issue, or "major doctrinal shifts" to render issues non-identical (internal quotation marks omitted)).

### 2. Availability of Federal Issue Preclusion Based on *Forum Non Conveniens* when Previous Decision was in State Court

Plaintiffs' final argument why this Court should not apply issue preclusion based on the Indiana Judgment boils down to their professed belief that  no *state* court's judgment is entitled to preclusive effect with respect to *forum non conveniens* in a federal court.  Defendants respond that the Full Faith and Credit Clause of the Constitution, U.S. Const. art. IV § 1, requires this Court to impute the same preclusive effect to a state-court judgment that I would accord to a federal judgment.

Here again, defendants have the law on their side.  In *Conopco, Inc. v. Roll International*, already discussed *supra*, the Second Circuit made clear that the Full Faith and Credit Clause, enforced through the Full Faith and Credit Act, 28 U.S.C. § 1738,[21] has "traditionally been applied" to issue preclusion (collateral estoppel), so long as the state proceedings "satisfy the

---

21.      Under the Full Faith and Credit Act, judicial proceedings of another state "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."  28 U.S.C. § 1738.  In *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518 (1986), the Supreme Court held that the Full Faith and Credit Act requires this Court "to give the same preclusive effect to a state-court judgment as another court of that State would give."  474 U.S. at 523.

minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." 231 F.3d at 87 (citation omitted).

Plaintiffs do not appear to disagree with the premise that if they raised their claims in another Indiana Superior Court, collateral estoppel would apply to bar their claims. Rather, they place heavy reliance on *Parsons v. Chesapeake & Ohio Railroad Co.*, 375 U.S. 71 (1963), which held that "a prior state court dismissal on the ground of forum non conveniens can never serve to divest a federal district judge of the discretionary power vested in him by Congress to rule upon a motion to transfer under [28 U.S.C.] § 1404(a)." 375 U.S. at 74. Because § 1404(a) incorporates many of the same factors as the common law doctrine of *forum non conveniens*, and because it is frequently referred to as the "convenience transfer statute," *see* 17 James Wm. Moore, Moore's Federal Practice § 111.03[1] (2009), plaintiffs assume that the holding in *Parsons v. C&O Railroad* must apply to common-law *forum non conveniens* determinations as well.[22]

Plaintiffs' interpretation of *Parsons v. C&O Railroad* is mistaken. It is beyond question that 28 U.S.C. § 1404(a) did not eliminate the common law doctrine of *forum non conveniens*; rather, it restricted its application only to "cases where the alternative forum is abroad." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 445 n.2 (1994). District courts have broader discretion to transfer venue within the United States, pursuant to § 1404(a), than they have when deciding whether to dismiss in favor of another nation, which requires a greater showing of inconvenience. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) (because of the greater discretion afforded to district courts under § 1404(a), cases that "focus on 'the

---

22.    This misunderstanding is sometimes shared by the courts. *See, e.g., Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 393 (2d Cir. 1992) (referring to a motion under § 1404(a) as a "*forum non conveniens*" motion).

construction and application' of § 1404(a)" are "simply inapplicable to dismissals on grounds of *forum non conveniens*"); *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 148 (2d Cir. 2000) (same).   Thus, the holding in *Parsons* is "simply inapplicable" here.[23]   In *Parsons*, the Supreme Court reasoned that between the state and federal courts, "different factual considerations may be involved in each court's determination" of whether the chosen *state* was the best forum for a case.   375 U.S. at 74.   That does not affect my conclusion that the Indiana Court applied the same factors when deciding whether the *United States* was the proper country in which to bring this action.   *See also Chazen v. Deloitte & Touche, LLP*, 247 F. Supp. 2d 1259 (N.D. Ala. 2003), *aff'd in relevant part, and rev'd in part*, 88 Fed. Appx. 390 (11th Cir. Dec 12, 2003) (table disposition) (distinguishing *Parsons* and applying collateral estoppel to preclude re-litigation of the issue of *forum non conveniens*).[24]

Plaintiffs also point to a recent decision of the Montana Supreme Court to argue that the Full Faith and Credit Clause does not apply here.   [Doc. #47] at 2.   In that case, the Montana

---

23.     Likewise, the cases applying *Parsons* that plaintiffs cite on pages 6 to 8 of their brief are not helpful.   *Noriega v. Lever Brothers Co.*, 671 F. Supp. 991 (S.D.N.Y. 1987), correctly applies the *Parsons* holding to avoid reliance on a state-versus-state forum determination.   *Naiditch v. Banque de Gestion Privee-SIB*, No. 92 C 5290, 1993 WL 153600 (N.D. Ill. May 10, 1993), misreads *Parsons* to apply to international *forum non conveniens* determinations when in fact it does not.   Finally, *Mizokami Brothers of Arizona, Inc. v. Mobay Chemical Corp.*, 660 F.2d 712 (8th Cir. 1981), declines to give preclusive effect to a *federal* court's previous *forum non conveniens* determination, because the prior ruling determined only that litigation in the District of Arizona was not convenient; the issue of whether a federal district in Missouri might be a more appropriate forum was "not explored in the Arizona litigation."   660 F.2d at 716.

24.     In an unpublished decision, the Eleventh Circuit affirmed the district court's extensive analysis of *Parsons* as well as its independent determination, in the alternative, that it was not the best forum for plaintiff's claims.   The court of appeals reversed and remanded with only an instruction that the dismissal of the case should have been *without* prejudice, because a dismissal for collateral estoppel is not a "decision on the merits."   Judgment [doc. #30], No. 02-cv-00352-KOB (N.D. Ala. filed Jan. 14, 2004).

Supreme Court held that an Illinois Court's *forum non conveniens* dismissal was not binding upon the state courts of Montana. *See Cook v. Soo Line R.R. Co.*, 198 P.3d 310 (Mont. 2008).

Plaintiff's characterization of the Montana Supreme Court's holding is mistaken, precisely because the prior dismissal in Illinois adjudicated the question of *which state* was the most appropriate forum for plaintiff's claim. *See id.* at 315 (the state trial court "erred by affording full faith and credit to the portion of the Illinois Decision ordering Cook to re-file in Indiana"). In this respect, the Montana Supreme Court's holding is exactly in line with U.S. Supreme Court precedent: a state court's determination of best forum *state* is not necessarily binding upon the federal courts (or other states); but a state court's determination of the best forum *country* is entitled to full faith and credit.

## IV.    Substantive *Forum Non Conveniens* Analysis

Because I am bound by the Full Faith and Credit Act to give preclusive effect to the Indiana Court's *forum non conveniens* determination, I dismiss this case on that ground. However, in the alternative and in the interests of judicial economy, I also address the substantive *forum non conveniens* question raised by RRC in its Motion To Dismiss [doc. #17], and accordingly undertake to make my own, independent determination of that issue.

### A.    Applicable Law

As I have already mentioned, it is unclear whether I should apply Connecticut or federal caselaw when adjudicating a *forum non conveniens* motion while sitting in diversity, but the point is moot since the doctrines are virtually identical. *See* Part III.B.1.ii., note 17 and accompanying text, *supra*.

I recently had occasion to summarize Second Circuit precedents in determining a motion to dismiss a case for *forum non conveniens*:

The doctrine of *forum non conveniens* permits a court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim." A district court should dismiss a complaint where, on balance, the resolution of the matter in an adequate alternative forum would be more convenient for the parties and courts and more just. "The first step in a *forum non conveniens* analysis is for the court to establish the existence of an adequate alternative forum. Second, the court must determine the level of deference to accord the plaintiff's choice of forum. Third, the court must weigh the public and private interests in order to determine which forum will be most convenient and will best serve the ends of justice."

A decision to dismiss "lies wholly within the broad discretion of the district court and may be overturned only when we believe that discretion has been *clearly abused*." "In the last analysis, it always must be borne in mind that there is no algorithm that assigns precise weights to the factors that inform *forum non conveniens* determinations. The doctrine instead is intensely practical and fact-bound. The most that may be said is that courts reach informed judgments after considering all of the pertinent circumstances."

*LaSala v. Bank of Cyprus Public Co.*, 510 F. Supp. 2d 246, 254 (S.D.N.Y. 2007) (Haight, J.) (collecting Second Circuit authority; citations omitted; emphasis in original). The Supreme Court has said that its own decisions "have repeatedly emphasized the need to retain flexibility" among the "factor[s] which may show convenience, " and that "[i]f central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable." *Piper Aircraft Co. v. Reyno*, 454 U.S. at 249-50.

With this standard in mind, I turn to the facts in this case.

**B.    Discussion**

As a general defense, plaintiffs argue that the purpose of a *forum non conveniens* dismissal is to prevent vexation, harassment, and oppression of defendants. *See* Pls.' Opp'n to RRC at 29. That language, found in *Gulf Oil Corp v. Gilbert*, 330 U.S. at 508, may have

reflected the birthplace of the doctrine, but the purpose of the doctrine today is not merely to prevent such harassment.   As plaintiffs acknowledge, "*Gilbert* held that dismissal *may* be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to harass the defendant *or take advantage of favorable law*."   *Piper*, 454 U.S. at 249 n.15 (emphases added).  The absence of vexation or harassment is not determinative as to any of the factors prescribed by *Gilbert.*  I turn to those factors now.

### 1.    Adequacy of the Alternative Forum

An alternative forum is adequate "if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003); *see also Piper*, 454 U.S. at 254.  This does not mean that an identical cause of action, or the same degree of relief, must be available in the alternative forum. *See PT United Can Co., Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998); *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 129 (2d Cir. 1987).

In the course of obtaining their *forum non conveniens* dismissal in the Indiana Action, the defendants in this case have already stipulated that they will not contest personal jurisdiction in Turkey, and that they will waive any statute-of-limitations defense.  *See* RRC Br. at 30 [doc. #17-2 at 38]; In. R. Trial P. 4.4(D), note 16, *supra* (requiring such waivers).  Plaintiffs do not contend that the defendants in this case have reneged on such a promise.

Indeed, in their brief, plaintiffs do not even argue that Turkey is an inadequate forum. Defendants, on the other hand, have submitted affidavits to demonstrate that Turkish law provides for a remedy for plaintiffs.  Specifically, the Turkish Code of Obligations provides a cause of action for negligent injury, including death (Article 41), and a plaintiff may recover medical expenses, funeral expenses, and lost income as a result of a wrongful death (Article 45),

as well as reparations for a relative's loss of a decedent's companionship (Article 47).   *See* Aff.

of Erdem Degerli ¶¶ 12-14, RRC Br. ex. D [doc. #17-7] at 4-6.   Furthermore, the defendants'

waivers of potential defenses based on personal jurisdiction or timeliness are valid and binding in

Turkey.  *Id.* ¶¶ 17-18.  Absent opposition, the Court sees no reason to doubt the expert evidence

offered by defendants.  I find that Turkey is an adequate alternate forum.

### 2.    Deference Due to Plaintiffs' Choice of Forum

In cases with foreign defendants, the home forum for the plaintiff is any federal district in

the United States.  *See Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 146 (2d Cir. 2000).

Thus, in this case, "I must consider the deference that should be given plaintiffs' choice to sue in

the United States (not [Connecticut] specifically) as opposed to [Turkey]."  *LaSala*, 510 F. Supp.

2d at 256.

Usually, a plaintiff's choice of forum commands considerable deference.  But "[w]hen

the plaintiff's choice is not its home forum, [] the presumption in the plaintiff's favor 'applies

with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less

reasonable.'"  *Sinochem*, 549 U.S. at 430 (quoting *Piper*, 454 U.S. at 255-256).  The Second

Circuit has specifically cautioned district courts that in these cases, "a plausible likelihood exists

that the selection was made for forum-shopping reasons," and even if this forum "was not chosen

for such forum-shopping reasons, there is nonetheless little reason to assume that it is convenient

for a foreign plaintiff."  *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (*en banc*).

Under the *Iragorri* framework, when determining the degree of deference owed to

plaintiffs' choice of forum, this Court should consider "the plaintiff's or the lawsuit's bona fide

connection to the United States and to the forum of choice," which includes "convenience of the

plaintiff's residence in relation to the chosen forum," as well as other factors that are neutral in this case. *Id.* at 72 (footnote omitted).

Here, plaintiffs cannot argue that they have any bona fide connection to the United States, and they unabashedly acknowledge that this judicial district was chosen as part of a "litigation strategy" to keep their claims in the United States. Pls.' Opp'n to RRC at 22. Thus, on the "sliding scale" of deference, *Iragorri*, 274 F.3d at 71, I find that the choice of the United States as the forum is entitled to very little, if any, deference.

### 3. Balance of Factors

In *Gulf Oil Corp. v. Gilbert*, the Supreme Court enunciated the private and public interest factors to consider when determining which forum is most convenient and will best serve the ends of justice. These include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." 330 U.S. at 508. Public interest factors include administrative difficulties stemming from court congestion, the interest in having "localized controversies decided at home," and the interest in having issues of foreign law decided by a foreign tribunal. *Id.* at 508-09.

### i. Private Factors

RRC argues, and plaintiffs do not dispute, that all of the individuals who perished in the helicopter accident were citizens of Turkey. The plaintiffs in this action are all citizens of Turkey. Witnesses to the actual accident remain in Turkey. The helicopter wreckage, including the helicopter engine itself, is in Turkey, as is a substantial amount of other physical and documentary evidence. "Where alleged misconduct is centered in the foreign forum and the

majority of evidence resides there, dismissal is favored." *LaSala*, 510 F. Supp. 2d at 258 (collecting cases).

Plaintiffs argue in response that RRC has failed to identify with specificity "a single witness or a single class of documents that possess or contain relevant information and are not present or easily accessible in the United States," and moreover, that defendants here are "in possession of the engine maintenance and airframe records in the United States." Pls.' Opp'n to RRC at 29. In contrast, plaintiffs argue that they have "set forth at least ten relevant and necessary witnesses in the United States." *Id.* at 33. Further disagreements over which witnesses are under RRC or GPECS's control, and which ones would be available to testify in Turkey, was the subject of continued disagreement in RRC's reply memorandum, plaintiffs' surreply, and a sur-surreply from RRC. *See* Docs. ##39, 44, 45.

As for witnesses, for the purposes of this motion, it is enough to observe that some witnesses are in Turkey and some are in the United States. Both plaintiffs and defendants will assume the cost of transporting the "willing" witnesses and evidence to their preferred forum, and neither party has submitted evidence regarding the cost of that transportation. Willing witnesses, therefore, favor neither party.

As for documentary evidence, RRC and GPECS may have retained copies of some documents during their investigations into the accident, and certain maintenance and training records will be exclusively in their possession, but the cost of transmitting these documents is negligible in today's electronic era, and RRC has agreed to provide "any documents and any witnesses whose testimony is deemed relevant." Aff. of W. Eric Pedersen ¶ 10 [doc. #39-2 at 3]. Similarly, as to physical evidence, plaintiffs are "willing and able to bring the subject engine and

its component parts to the United States at their expense."  Pls.' Opp'n to RRC at 34.  Thus, I find that documentary and physical evidence favors neither party, so long as it is within the parties' control.

Thus, the Court considers with extra care the other factors identified in *Gulf Oil Corp. v. Gilbert*, including "the relative ease of access to sources of proof," the "availability of compulsory process for attendance of unwilling . . . witnesses," and a view of the accident scene. 330 U.S. at 508.  Aside from willing witnesses and documents produced by the parties themselves, the "sources of proof" that will be required in this air-crash negligence case are clearly located in Turkey.  In particular, physical evidence is located in Turkey — and although plaintiffs pledge their eagerness to pay for its transportation, and they state that Turkish authorities have "allowed" this evidence to be transported "[t]o date," Pls.' Opp'n to RRC at 34, the evidence is nevertheless clearly outside this Court's subpoena power.  Similarly, the bulk of the likely *unwilling* witnesses, such as those "who could testify about the maintenance of the helicopter, training of the pilot, and investigation of the accident," RRC Br. at 33, are unquestionably located in Turkey.  The scene of the accident can only be viewed in Turkey.  And finally, the Court notes that most, if not all, of the records and reports generated in Turkey will be in Turkish, favoring a Turkish-speaking trier of fact.

In sum, balance of the private factors strongly favors the country of Turkey as the more convenient forum.

### ii.    Public Factors

The Supreme Court's articulation of the public policy factors that weigh upon the Court's discretion are the same today as they were in 1947, when *Gulf Oil Corp. v. Gilbert* was decided:

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

330 U.S. at 508-09; *see also Iragorri*, 274 F.3d at 74 (quoting this passage in full).

In all these respects, the record before me speaks with stark clarity: this case belongs in Turkish courts. Plaintiffs' only arguments to the contrary are vague assertions that domestic corporations must be held liable for the defects inherent in their products, and an argument that Connecticut's "independent cause of action" for spoliation creates a public interest in Connecticut. *See* Pls.' Br. at 37-39. Neither of these arguments is compelling.

"[C]ourts have repeatedly exercised their discretion to hold that a defendant's manufacturing activities within the U.S. do not tilt the public interest in favor of retaining jurisdiction . . . ." *In re Air Crash Near Peixoto De Azeveda, Braz. on Sept. 29, 2006*, 574 F. Supp. 2d 272, 288 (E.D.N.Y. 2008) (citing cases). Having considered the factors set forth by the Supreme Court, I easily conclude that the United States's interest in this case "pales in comparison" to Turkey's. *Id.*

As for plaintiffs' arguments about spoliation, they are as unavailing here as they were to distinguish this Court's *forum non conveniens* test from the one facing the Indiana Court. For reasons discussed *supra*, the Connecticut Supreme Court's spoliation claim requires "underlying

-28-

litigation." *Rizzuto*, 905 A.2d at 1180.  The derivative spoliation claim, which only springs to life when the primary cause of action has been sabotaged by malfeasance, cannot tip the balance of public interest factors in favor of the United States, precisely because the merits of the "underlying litigation" will need to be determined by a Turkish court.

**V.**      **RRC's Motion To Dismiss under Rule 12(b)(2) for Lack of Personal Jurisdiction**

Because this case is appropriate for dismissal under the doctrine of *forum non conveniens*, the Court need not reach RRC's arguments against personal jurisdiction.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007) ("[W]here subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course."); Pls.' Opp'n to RRC [doc. #32] at 20-21 (requesting discovery into factual issues surrounding personal jurisdiction).

**VI.**      **Conclusion**

I am mindful of the Second Circuit's words of caution: "just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons."  *Irragori*, 274 F.3d at 75.  Nevertheless, the balance of factors in this case overwhelmingly favors the convenience of the Turkish forum over that of the United States.  To the extent a dismissal on those grounds is not already compelled by the Indiana Judgment, I independently reach that conclusion now.

The defendants' motions to dismiss are **GRANTED**, and plaintiffs' Complaint is **DISMISSED**.  A subsequent determination on the issue of *forum non conveniens* is precluded by

the Indiana Judgment; and to the extent such preclusion does not exist, the balance of convenience factors strongly favors dismissal in favor of the Turkish forum.

The Clerk is instructed to close the file.

Dated: New Haven, Connecticut
        May 10, 2010

　　　　　　　　　　　　　　　　　　　　___/s/ Charles S. Haight, Jr._____
　　　　　　　　　　　　　　　　　　　　Charles S. Haight, Jr.
　　　　　　　　　　　　　　　　　　　　Senior United States District Judge